## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

James J. Carney

    v.                            Civil No. 15-cv-291-LM
                                        Opinion No. 2017 DNH 031

Town of Weare, et al.

## O R D E R

James J. Carney brings suit against the Town of Weare ("the Town"), its Board of Selectman, its Town Administrator, several of its police officers, and its legal counsel, Mark Broth, alleging state and federal claims arising from his employment as an officer in the Weare Police Department. The defendants move for judgment on the pleadings on several of Carney's claims. Carney objects.

### Legal Standard

In assessing a motion for judgment on the pleadings, the court construes "all well-pleaded facts in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." Najas Realty, LLC v. Seekonk Water Dist., 821 F.3d 134, 140 (1st Cir. 2016). Judgment on the pleadings is appropriate if "the complaint fails to state facts sufficient to establish a claim to relief that is plausible on its face." Id. The standard "is the same as that for a motion

to dismiss under Rule 12(b)(6)."  Frappier v. Countrywide Home Loans, Inc., 750 F.3d 91, 96 (1st Cir. 2014), cert. denied, 135 S. Ct. 179 (2014).

Factual Background[1]

Carney served on the Weare Police Department ("WPD") for over twenty years, achieving the rank of Lieutenant in 2007.  In the summer of 2012, Carney was accused of making harassing telephone calls to Louis Chatel, the plaintiff in a lawsuit against Carney and the Town.  Around the same time, Broth, counsel for Carney and the Town in the Chatel case, informed Carney that he was withdrawing as his counsel but would continue representing the Town.

Later in the fall, the WPD hired an attorney to investigate allegations that Carney had vandalized department property.  Broth advised the attorney about the procedures that he should use while conducting his investigation.  Carney requested that the subject of the investigation be expanded to include the harassing calls allegation, but Broth and the Town rejected that request.

In December of 2012, Broth called Carney and questioned him about allegations that Carney disclosed WPD personnel

---

[1] The facts in this section are taken from Carney's Second Amended Complaint ("the complaint"), which is the operative complaint in this action.  Doc. no. 21.

information to outside agencies without proper authorization. Carney alleges that this telephone call was part of an ongoing internal affairs investigation that Broth was conducting against him.

In January 2013, a WPD officer filed a sexual harassment complaint concerning an incident in which several officers, including Kenneth Cox, Frank Hebert, Kimberly McSweeney,[2] and Brandon Montplaisir, spread rumors about an extramarital affair between Carney and a female Town employee.  Cox, Montplaisir, and Hebert used "rude . . . and lewd" terminology to describe the alleged affair.  Carney met with WPD Chief, Gregory Begin, and requested an internal investigation concerning the incident.

On March 1, Broth attended a meeting with Thomas Clow, a member of the Board of Selectman; Naomi Bolton, the Town's Town Administrator; and several WPD employees including Cox, Hebert, McSweeney, Montplaisir, Nicholas Nadeau, and Shelia Savaria ("the Police Defendants").  During that meeting, the Police Defendants raised numerous allegations against Carney.  Carney contends that these allegations were false and were the result of a conspiracy among the Police Defendants to cause Carney's termination from the WPD.  Carney further alleges that Broth knew that these allegations conflicted with positive testimony

---

[2] Kimberley McSweeney is erroneously referred to as Kimberly Sweeney in the complaint's caption.

about Carney that Cox, Hebert, and Montplaisir gave in the Chatel case.

Three days later, the Board of Selectman voted to place Carney on administrative leave.  Based on orders from Broth and the Town, Begin wrote a memorandum to WPD employees announcing the decision and instructing them not to have any contact with Carney.  Carney also received a letter confirming that he was on administrative leave and prohibiting him from contacting any WPD employee except Begin.  While on leave, the WPD paid Carney "only 40% of his usual salary."  Doc. no. 21 at ¶ 233.

On March 28, Broth hired attorney John Vinson to conduct a formal investigation into the allegations concerning Carney. Those allegations included, among other things, claims that Carney threatened to harm WPD employees and a confidential informant, intimidated subordinates, coerced support from coworkers for his appointment to captain, maintained an inappropriate intimate relationship with a WPD employee, and shared WPD personnel information with subordinates and third parties.  Broth placed his advice to Vinson about how to conduct the investigation in a letter, which, Carney contends, contained legally erroneous instructions.

Carney alleges that the investigation was procedurally flawed and was a delay tactic on the part of Broth and the Town "to force Carney out of the workforce."  By July 1, 2013, the

WPD had not notified Carney about the results of the investigation.  At that time, Carney, who was still on administrative leave, resigned from the WPD.  Carney alleges that the stress and uncertainty of the investigation forced him to resign.  Five months later, Carney filed a complaint with the New Hampshire Commission for Human Rights alleging that he was sexually harassed and that Weare and the WPD, through launching an internal investigation and placing him on administrative leave, had illegally retaliated against him.

Carney then brought this suit against the following defendants: the Town; Broth; the Police Defendants; Bolton; and the members of the Weare Board of Selectmen, Richard W. Butt, Keith Lacasse, John C. Lawton, James Leary, and Clow.[3]  Carney's complaint alleges a variety of claims against these defendants under common law, federal civil rights laws, and New Hampshire Statutes, including claims for:

- civil conspiracy against Broth and the Police Defendants (Count I)

- defamation against all defendants (Count II)

- interference with a contractual relationship against Broth, the Police Defendants, and the Individual Town Defendants (Count III)

- intentional infliction of emotional distress against all defendants (Count IV)

---

[3] The court refers to Bolton, Butt, Lacasse, Lawton, Leary, and Clow collectively as "the Individual Town Defendants."

- negligent infliction of emotional distress against Broth, the Individual Town Defendants, and the Police Defendants (Count V)

- 42 U.S.C. § 1983 claim for violation of Carney's First Amendment Rights against the Town, Broth, and the Individual Town Defendants (Count VI)

- § 1983 claim for violation of due process against the Town, Broth, and the Individual Town Defendants (Count VII)

- § 1983 claim for conspiracy to violate civil rights against all defendants (Count VIII)

- wrongful termination against The Town (Count IX)

- sexual discrimination, retaliation, and aiding and abetting claims against all defendants under New Hampshire's Law Against Discrimination, RSA 354-A (Count X)

- violation of New Hampshire's Whistle Blower Protection Act, RSA 275-E against the Town (Count XI)

- gender discrimination and retaliation against the Town under Title VII, 42 U.S.C. § 2000e-2 (Count XII)

- violation of New Hampshire's Employee Freedom of Expression Law, RSA 98-E against the Town (Count XIII)[4]

## Discussion

The Town, Broth, the Police Defendants, and the Individual Town Defendants each move separately for judgment on the pleadings on several of Carney's claims. For clarity's sake, the court will address the motions for the Town, the Police

_____

[4] The complaint also alleges several claims on behalf of Tracey Carney, Carney's wife, including a loss of consortium claim (Count XIV). Those claims have been dismissed from this action. See Endorsed Order (dated Aug. 25, 2016).

Defendants, and the Individual Town Defendants (doc nos. 35, 36, 37), all of which raise overlapping issues, separately from Broth's motion (doc. no. 31).

I.      Motions for the Town, Police Defendants, and Individual Town Defendants

Although the motions for the Town, the Police Defendants, and the Individual Town Defendants differ in substance, the arguments therein fall into the following general categories:

- Preclusion Arguments:  The Town, the Police Defendants, and the Individual Town Defendants move for judgment on the pleadings on Carney's claims for wrongful termination and interference with a contractual relationship, arguing that an arbitration decision between the Town and Carney's union precludes those claims.[5]

- Sexual Harassment Claims:  The Police Defendants and the Individual Town Defendants each move for judgment on Carney's claims under RSA 354-A, arguing that the complaint does not allege actionable sexual discrimination and that Carney did not exhaust his administrative remedies.  The Town moves for judgment on the pleadings on Carney's sexual

---

[5] The Town and the Individual Town Defendants also moved for judgment on the pleadings on these claims based on the Labor Management Relations Act, 29 U.S.C. § 301.  Weare and the Individual Town Defendants have conceded, however, that the LMRA does not apply to public employees and have withdrawn their arguments based on that statute.

harassment claims against it, also arguing that Carney has
not alleged actionable sexual harassment.

- Defamation Claims:  The individual town defendants also
move for judgment on the pleadings on Carney's claims for
defamation, arguing that Carney has failed to plead that
they published any statements about him.

In response to the Police Defendants' motion, Carney filed
an objection on August 1, 2016.  See doc. no. 40.  Because that
objection attached an exhibit containing personal identifiers,
Carney refiled his objection with a redacted exhibit on August 6
(see doc. no. 46).  The objection that Carney filed, however,
was substantively different from the first objection that Carney
filed five days earlier.  Carney contends that this was because
that document "was not the final product, but the draft which
was mistakenly filed."  Doc. no. 60.  Carney's counsel "refiled"
the objection without notifying the court or the Police
Defendants' counsel that he was filing a substantively different
objection.  Carney's decision to file a different objection and
the accompanying omission of that fact is an end around the
applicable deadlines for responding to dispositive motions.
Accordingly, the court will only consider material in Document
no. 46 to the extent that material was included in Document no.
40.

A.   Preclusive Effect of Arbitration Award

The Town moves for judgment on the pleadings on Carney's claim for wrongful termination, arguing that the claim is barred by the doctrine of res judicata.  In support, the Town attaches a decision in an arbitration between AFSCME, Carney's union, and itself, which, the Town contends, determined that Carney voluntarily resigned from the WPD and was not discharged.  Doc. no. 36-2.  Similarly, the Police Defendants and Individual Town Defendants move for judgment on the pleadings on Carney's claims for interference with a contractual relationship, arguing that the arbitration award is determinative of an essential element of those claims: whether the Town breached its employment contract with Carney.  In support, those defendants also attach the arbitration decision to their motions.  Doc. no. 35-2.

In response, Carney argues that the arbitration award cannot be considered at this stage of the litigation and that the award is misleading because it does not include the entire arbitration record.  Carney further contends that the arbitration award is not preclusive and that it is appealable.

1.   Consideration of the Arbitration Award

On a motion for judgment on the pleadings, the court "ordinarily may consider only facts contained in the pleadings and documents fairly incorporated therein, and those susceptible

to judicial notice." Mercury Sys., Inc. v. S'holder
Representative Servs., LLC, 820 F.3d 46, 51 (1st Cir. 2016).
Federal Rule of Evidence 201 governs whether a fact is
judicially noticeable.  Under Rule 201, a court "may judicially
notice a fact that is not subject to reasonable dispute because
it . . . is generally known within the trial court's territorial
jurisdiction . . . or can be accurately and readily determined
from sources whose accuracy cannot reasonably be questioned."
Fed. R. Evid. 201(b)(1) & (2).  "The party requesting judicial
notice bears the burden of persuading the trial judge that the
fact is a proper matter for judicial notice." AES Puerto Rico,
L.P. v. Trujillo-Panisse, No. CV 14-1767 (FAB), 2016 WL 4016825,
at *1 (D.P.R. July 27, 2016) (internal quotation marks omitted).

     Generally, public records, such as administrative
decisions, state court decisions, and statewide standards are
noticeable under this standard.  See Freeman v. Town of Hudson,
714 F.3d 29, 37-38 (1st Cir. 2013) (citing cases).  The Town,
the Police Defendants, and the Individual Town Defendants
contend that the arbitration decision is a public record because
it is from the New Hampshire Public Employee Labor Relations
Board (the "PELRB").  In response, Carney contends that the
arbitration decision is not a public record but rather a
decision from a private arbitration.  Carney argues that the

arbitration's only link to the PELRB is that the parties to the arbitration used that agency to select a neutral arbitrator.

Here, although the defendants contend that the arbitration award is a public record from the PELRB, they present no argument to support that assertion.  To the contrary, the circumstances appear to support Carney's characterization of the award as a private arbitration in which the PELRB merely assisted the parties in nominating an arbitrator.  The PELRB's regulations permit parties to request the appointment of a neutral arbitrator from a list of qualified parties that the PELRB maintains.  N.H. Code Admin. R. Pub. 102.1(e); 305.02(a)-(c).  And Betty Waxman, the arbitrator who issued the decision, is on this list and appears to be a private attorney, not a staff member of the PELRB.  See NH PELRB List of Neutrals, available at https://www.nh.gov/pelrb/neutrals/documents/list.pdf, (listing Betty Waxman as a neutral available to conduct arbitration).  Defendants do not explain how the arbitration decision, which appears to have been decided by a non-public, neutral arbitrator, is a public record.[6]

---

[6] The arbitration decision contains a heading that states "State of New Hampshire Public Employee Labor Relations Board." Neither party, however, addresses this heading.  For the reasons discussed above, the court concludes that such a heading is not dispositive of the arbitration decision's status as a public record.

Accordingly, defendants have not met their burden of demonstrating that the arbitration decision is noticeable under Fed. R. Evid. 201.

This decision is in accord with the decisions of other federal courts who have held that private arbitration awards are not appropriate for consideration at the pleadings stage.  See United States v. Speakman, 594 F.3d 1165, 1172 n.4 (10th Cir. 2010) ("[T]he NASD (which no longer exists) was not a public agency, so its arbitration awards are not public records.  We are thus unconvinced that we can take judicial notice of the contents of a private arbitration award, and we decline to do so."); Kisby Lees Mech. LLC v. Pinnacle Insulation, Inc., No. CIV. 11-5093 JBS/AMD, 2012 WL 3133681, at *4 (D.N.J. July 31, 2012) ("As the Court finds no indication that the arbitration award is a matter of public record, the Court declines [to] consider it as such."); Zellner v. Herrick, No. 08-C-0315, 2009 WL 188045, at *3 (E.D. Wis. Jan 22, 2009).

## 2.   Preclusive Effect

Defendants' res judicata and preclusion arguments rely exclusively on the contents of the arbitration decision. Because the court cannot consider that document at this stage of the litigation, defendants' motions for judgment on the pleadings on those claims are denied.  Defendants' arguments

concerning the arbitration decision's preclusive effect are best
handled in the context of a properly-supported motion for
summary judgment.

B.   Defamation (Count II)

 The Individual Town Defendants move for judgment on the
pleadings on Carney's defamation claims against them.   The
Individual Town Defendants argue that Carney does not state a
claim for defamation because the complaint does not allege that
any of them made statements about Carney.   In response, Carney
contends that he needs discovery to identify the defamatory
statements made by the Individual Town Defendants.   Carney
argues that the defamation claim should proceed to discovery
because some unknown person disseminated the material in his
personnel file, which has prevented him from obtaining jobs in
law enforcement.

"To state a claim of defamation under New Hampshire law, a
plaintiff must allege facts that show 'the defendant failed to
exercise reasonable care in publishing a false and defamatory
statement of fact about the plaintiff to a third party, assuming
no valid privilege applies to the communication.'" Brady v.
Somersworth Sch. Dist., No. 16-CV-069-JD, 2016 WL 3248247, at *4
(D.N.H. June 13, 2016) (quoting Thomas v. Tel. Publ'g Co., 155
N.H. 314, 321 (2007)).   Here, Carney concedes that he has not

13

alleged that any of the Individual Town Defendants published any
statements about him.  Therefore, Carney does not plead a
plausible defamation claim against the Individual Town
Defendants.

Carney's assertions that some unidentified person
disseminated the material in his personnel file cannot save his
defamation claims against the Individual Town Defendants.
Carney points to no allegation in the complaint alleging that
anyone affiliated with the Town disclosed the information
contained in his personnel file.  In fact, Carney appears to
allege that it was he who informed potential employers about the
contents of his personnel file.  Doc. no. 21 at ¶ 182 ("Carney
was obligated to inform potential employers about the
investigation, since upon his request, his personnel file was
tendered and it included the notice of administrative leave, and
the 'specification of charges'.").  In any event, Carney does
not allege that any of the Individual Town Defendants were
involved in maintaining or had access to his personnel file.
Because Carney has not alleged facts that would allow this court
to reasonably infer that the Individual Town Defendants
published false statements about him, his defamation claims
against those defendants fail.

C.   <u>Discrimination Claims (Counts X and XII)</u>

Carney brings claims for sexual harassment, aiding and
abetting unlawful employment practices, and retaliation against
all defendants under RSA 354-A, New Hampshire's Law Against
Discrimination.  Carney also brings a claim for unlawful gender
discrimination and retaliation against the Town under Title VII,
42 U.S.C. § 2000e-2.  Carney's discrimination claims are
premised on the allegation that his coworkers circulated rumors
that he had an extramarital affair with a female Town employee.

The Town, the Individual Town Defendants, and the Police
Defendants move for judgment on the pleadings on Carney's
harassment claims, arguing that Carney has failed to state a
claim for sexual discrimination.  The Police Defendants also
move for judgment on the pleadings on Carney's retaliation
claim, arguing that Carney has failed to allege any protected
activity or retaliatory conduct.  Finally, the Individual Town
Defendants and the Police Defendants move for judgment on the
pleadings on all of Carney's claims because Carney did not name
them in the administrative complaint that he filed with the New
Hampshire Commission for Human Rights, as required under RSA
354-A.

1.   <u>Applicable Law</u>

Carney brings his discrimination claims under RSA 354-A and
its federal counterpart Title VII.  "[T]he New Hampshire Supreme

Court relies on cases developed under Title VII to interpret claims under RSA 354-A." Salisbury v. Home Depot, U.S.A., Inc., No. 14-CV-260-JD, 2014 WL 6750648, at *2 n.4 (D.N.H. Dec. 1, 2014).  Although federal case law is not controlling, it is instructive when interpreting similar statutory provisions and issues that the New Hampshire Supreme Court has not yet decided. Madeja v. MPB Corp., 149 N.H. 371, 378 (2003) ("As this is an issue of first impression under RSA chapter 354-A, we rely upon cases developed under Title VII to aid in our analysis."); Scarborough v. Arnold, 117 N.H. 803, 807 (1977) (observing that "it is helpful to look to the experience of the federal courts in construing the similar provisions of Title VII of the 1964 Civil Rights Act" when analyzing RSA 354-A).  Accordingly, the court will apply Title VII standards to the RSA 354-A claims, unless New Hampshire precedent or the statutory language of RSA 354-A warrant otherwise.

2.   Exhaustion of Administrative Remedies

A person may bring a civil action under New Hampshire's Law Against Discrimination only "at the expiration of 180 days after the timely filing of a complaint with the commission, or sooner if the commission assents in writing."  RSA 354-A:21-a.  Such a complaint must be verified and "state the name and address of the person . . . alleged to have committed the unlawful

discriminatory practice complained of and . . . set forth the particulars thereof." RSA 354-A:21(I)(a).  Under the Commission's regulations, "all complaints of employment discrimination" must be filed on an EEOC charge of discrimination form or in a letter incorporating the same information.  N.H. Code Admin. R. Hum. 202.02(a).  Naming a respondent in an administrative complaint is often called a "charging requirement," and failure to comply with that requirement "precludes a claim under RSA 354-A in court." Wilson v. Port City Air, Inc., No. 13-CV-129-JD, 2013 WL 2631860, at *2 (D.N.H. June 12, 2013).

A plaintiff's failure to exhaust administrative remedies, such as the charging requirement here, is an affirmative defense.  McKinnon v. Kwong Wah Rest., 83 F.3d 498, 505-06 (1st Cir. 1996) (holding that Title VII's charging requirement is an affirmative defense); Miles v. Bellfontaine Habilitation Ctr., 481 F.3d 1106, 1107 (8th Cir. 2007) (per curiam).  As such, Carney's failure to exhaust his administrative remedies "will support a motion to dismiss only where [that failure] is (1) definitively ascertainable from the complaint and other sources of information that are reviewable at this stage, and (2) the facts establish the affirmative defense with certitude." Citibank Glob. Markets, Inc. v. Rodriguez Santana, 573 F.3d 17, 23 (1st Cir. 2009); see also Kraus v. Presidio Trust Facilities

17

Div./Residential Mgmt. Branch, 572 F.3d 1039, 1046 (9th Cir. 2009) (holding defendant must plead and prove exhaustion of Title VII remedies).[7]

### a.   Nadeau, Savaria, and Bolton

Carney concedes that he failed to name Nadeau, Savaria, and Bolton in any of his administrative filings and that his RSA 354-A claims against those defendants may be dismissed.  Doc. nos. 46 at 4; 60 at 13.  Accordingly, Nadeau, Savaria, and Bolton's motions for judgment on the pleadings on Carney's claims under RSA 354-A are granted.

---

[7] The Individual Town Defendants contend that the Supreme Court has referred to Title VII's charging requirement as jurisdictional.  Doc. no. 37 at 17 (citing Alexander v. Gardner-Denver Co., 415 U.S. 36 (1974)).  The Supreme Court, however, characterized that reference as dicta in Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 395 & n.12 (1982), when it concluded that Title VII's requirement for filing a timely charge was nonjurisdictional.  Since Zipes, a number of circuits have concluded that Title VII's preconditions, including the charging requirement, are nonjurisdictional.  See McKinnon, 83 F.3d at 505-06 (citing cases and concluding charging requirement nonjurisdictional); Greenwood v. Ross, 778 F.2d 448, 450 (8th Cir. 1985) (same); see also Francis v. City of N.Y., 235 F.3d 763, 768 (2d Cir. 2000) (observing that "the overwhelming majority of other circuits have held . . . as a general matter, the failure to exhaust administrative remedies is a precondition to bringing a Title VII claim in federal court, rather than a jurisdictional requirement").

b.   <u>Remaining Defendants</u>

Carney alleges that on December 27, 2013, he "filed a charge of discrimination against the defendants at the New Hampshire Human Rights Commission."  Doc. no. 21 at ¶ 258.  In their motions, the Police Defendants and the Individual Town Defendants assert that Carney's RSA 354-A claims against them are defective because he failed to individually identify them in that charge.  In support, they attach as an exhibit to their motions the EEOC charge of discrimination form that Carney filed with the Commission.  There is no dispute that the only respondent named on that form is the Town.[8]

Carney argues, however, that he should be excused from naming the Police and Individual Town Defendants (but for Nadeau, Savaria, and Bolton) in his formal administrative complaint.  In support, Carney attaches the intake questionnaire form that he filed with the Commission, in which he stated that he wanted to file a charge against the "Town of Weare; agents, employees, including Mark Broth."  Doc. 47-2.  Carney argues

---

[8] The court will consider the parties' exhibits containing Carney's filings with the Commission because Carney's complaint sufficiently references the filings that he made with the Commission.  Innovative Mold Sols., Inc. v. All Am. Ins. Co., Inc., No. 4:15-CV-40010-TSH, 2016 WL 3814774, at *4 (D. Mass. July 12, 2016) ("When reviewing a motion under Rule 12(c), the court may consider . . . documents sufficiently referred to in the complaint.").

that this questionnaire is either a supplement to his formal
charge or, alternatively, entitles him to an exception to the
charging requirement because it provided the defendants notice
of the allegations against them.  Carney also argues that he was
unable to comply with the Commission's regulation concerning
administrative complaints because that regulation does not allow
a complainant to name employees or an employer's agents, such as
the defendants here, as respondents.

The New Hampshire Supreme Court has not had occasion to
consider whether there are any exceptions to RSA 354-A's
charging requirement.  Federal courts, however, have concluded
that Title VII's similar charging requirement "is subject to a
host of equitable exceptions."  See, e.g., Jorge v. Rumsfeld,
404 F.3d 556, 565 (1st Cir. 2005); McKinnon v. Kwong Wah Rest.,
83 F.3d 498, 505 (1st Cir. 1996) (citing cases).  One such
exception exists when the defendant, although not named, had
notice of the allegations against him and shared a commonality
of interest with the named party.  Hashem v. Hunterdon Cty., No.
158585-cv-FLWDEA, 2016 WL 5539590, at *8 (D.N.J. Sept. 29,
2016); see also 4-76 Larson on Employment Discrimination § 76.06
(2015) (noting that the commonality of interest exception has
been adopted by multiple circuits).  In addition, the failure to
file an administrative charge under Title VII may potentially be
excused when pursuing those remedies would be futile.  See

20

Fowlkes v. Ironworkers Local 40, 790 F.3d 378, 386 (2nd Cir. 2015) (finding error where district court did not consider possibility that Title VII plaintiff had "equitable defense" to exhaustion argument based on futility); accord Dembiec v. Town of Holderness, 167 N.H. 130 (2014) (concluding that "exhaustion of remedies is not required" when pursuing such remedies "would have been futile").[9]

Here, based on the pleadings and the documents properly under consideration, the court cannot conclude that RSA 354-A's charging requirement bars Carney's claims.  First, the parties appear to dispute whether the Commission provided Carney's intake questionnaire to the Town as a supplement to the formal charge that Carney filed.  This issue is relevant to whether the Police Defendants and Individual Defendants had notice of the allegations against them and can only be resolved through extrinsic evidence.[10]  Second, as Carney points out, the

---

[9] Carney does not explicitly raise the doctrine of futility as a legal basis for an exception to the charging requirement. Carney does, however, arguably raise the issue by asserting that the Commission's regulations do not allow administrative complaints that name employees or an employer's agents as respondents.  Therefore, out of an abundance of caution, the court will construe Carney's factual argument concerning the Commission's regulations as an assertion of a futility exception to RSA 354-A's charging requirement.

[10] The court does not decide whether such a supplement could qualify as an administrative complaint under RSA 354-A:21 and the relevant regulations.

Commission's regulations appear to prohibit a complainant from naming an employee or company agent, such as the individual defendants here, as a respondent to an administrative complaint.[11]   Therefore, Carney could show that exhausting the administrative remedies for his claims against those defendants was futile.

Accordingly, the Police Defendants' and Individual Town Defendants' motions for judgment on the pleadings based on Carney's failure to name them in an administrative complaint to the Commission are denied except as to Savaria, Nadeau, and Bolton.   Defendants' arguments concerning Carney's exhaustion of his administrative remedies may be raised in a properly-supported motion for summary judgment.

### 3.   Sexual Harassment and Gender Discrimination

The Town, the Individual Town Defendants, and the Police Defendants argue that Carney's claims for sexual harassment

---

[11] The Commission's regulations require that a complainant make an administrative complaint on an EEOC charge of discrimination form or by a letter that adopts that form's "pre-printed list of choices" for identifying the respondent's relationship to the complainant.   See N.H. Code Admin. R. Hum. 202.02(a)-(b).   Those choices are limited to the complainant's: employer, labor organization, employment agency, apprenticeship committee, or state or local government agency.   Id.; see also Wilson, 2013 WL 2631860, at *3 (noting that "the form provided by the Commission does not provide space to name individuals charged with discrimination who are not an employer, labor organization, employment agency, apprenticeship committee, or agency").

under RSA 354-A and gender discrimination under Title VII must
be dismissed because the complaint does not allege conduct that
is actionable under those laws.  In support, they contend that
Carney's complaint fails to allege a hostile work environment
and fails to allege discriminatory conduct that occurred on the
basis of sex.  Carney does not respond to the defendants'
argument but instead argues that his claim may proceed as a
retaliation claim.

a. <u>Hostile Work Environment</u>

Carney alleges that the conduct in the complaint is
actionable under RSA 354-A and Title VII because it created a
hostile work environment.  Doc. no. 21 at ¶ 256.  To state a
harassment claim based on a hostile work environment theory,
Carney must allege that the purported harassment was
"sufficiently severe or pervasive as to materially alter the
conditions of [his] employment and create an abusive work
environment."  Posteraro v. RBS Citizens, N.A., 159 F. Supp. 3d
277, 286 (D.N.H. 2016).  Generally, isolated incidents based
exclusively on verbal conduct do not render a workplace hostile
or abusive.  Pomales v. Celulares Telefonica, Inc., 447 F.3d 79,
83-84 (1st Cir. 2006).  In other words, "simple teasing, offhand
comments, and isolated incidents (unless extremely serious) will
not amount to discriminatory changes in the 'terms and

23

conditions of employment.'"  Faragher v. City of Boca Raton, 524
U.S. 775, 788 (1998).

Here, Carney alleges that another officer overheard his
coworkers discussing in lewd terms an extramarital affair that
he was having with a female employee.  Carney also alleges that
the same officer heard the same employees repeating the same
comments at some point "later."  Even if true, which the court
accepts at this stage, the conduct alleged does not constitute
"severe or pervasive" harassment.  Rather, Carney has only
alleged isolated, offhand gossip, which cannot by itself amount
to a hostile work environment.  Therefore, although likely
embarrassing, the alleged comments do not constitute a hostile
work environment under either RSA 354-A or Title VII.

### b.  Conduct on the Basis of Sex

Carney's harassment claims also fail because they do not
allege discrimination that occurred on the basis of sex.  Title
VII and RSA 354-A prohibit harassment when it constitutes
discrimination on the basis of sex.  Aponte-Rivera v. DHL Sols.
(USA), Inc., 650 F.3d 803, 808 (1st Cir. 2011) ("Title VII . . .
prohibits discrimination on the basis of sex . . . ."); RSA 354-
A:7(V) (defining "[h]arassment on the basis of sex" as "unlawful
sexual discrimination").  As the Supreme Court has explained,
the critical question in determining whether harassment occurs

24

on the basis of sex is "whether members of one sex are exposed
to disadvantageous terms or conditions of employment to which
members of the other sex are not exposed." Oncale v. Sundowner
Offshore Servs., Inc., 523 U.S. 75, 80 (1998).  In Oncale, the
Court emphasized that Title VII is not a "general civility code"
and explained that it had "never held that workplace harassment,
even harassment between men and women, is automatically
discrimination because of sex merely because the words used have
sexual content or connotations."  Id.

    Relying on this principle, courts have concluded that
rumors of sexual relationships between a male and female
employee cannot be the sole basis for liability under Title VII
because such rumors affect both sexes and are not made on the
basis of sex.  Duncan v. Manager, Dep't of Safety, City & Cty.
of Denver, 397 F.3d 1300, 1312 (10th Cir. 2005); Pasqua v.
Metro. Life Ins. Co., 101 F.3d 514, 517 (7th Cir. 1996); Lewis
v. Bay Indus., Inc., 51 F. Supp. 3d 846, 856 (E.D. Wis. 2014);
Dube v. Hadco Corp., No. 87-554-SD, 1999 WL 1210885, at *6
(D.N.H. Feb. 4, 1999); see also Andersen v. Rochester City Sch.
Dist., No. 09-CV-6259, 2011 WL 1458068, at *6 (W.D.N.Y. Apr. 15,
2011)(assessing rumors of an affair between a teacher and
student), aff'd, 481 F. App'x 628 (2d Cir. 2012).  As the
Seventh Circuit explained in Pasqua, "[s]uch rumors spread,

irrespective of the truth, for any number of reasons having nothing to do with gender discrimination." 101 F.3d at 517.

In his complaint, Carney alleges that a group of his colleagues spread rumors that he was having an affair with a "female Town employee."  On their face, those allegations are gender neutral and do not exhibit any gender bias.  Further, the complaint contains no additional allegations of harassment or conduct that would allow the court to plausibly infer that the alleged rumors were circulated because of Carney's sex. Therefore, because Carney has not adequately pled sexual harassment on the basis of sex, his sexual discrimination claims fail.  Dellefave v. Access Temporaries, Inc., No. 99 CIV. 6098 RWS, 2001 WL 25745, at *7 (S.D.N.Y. Jan. 10, 2001)(dismissing claim for sexual harassment premised on allegations of rumors of a sexual relationship).

Accordingly, the court grants the motions for judgment on the pleadings on Carney's discrimination claims against the Individual Town Defendants, the Police Defendants, and the Town.

### 4.  Retaliation

Carney brings retaliation claims against the Police Defendants under RSA 354:19.  The Police Defendants move for judgment on the pleadings on those claims, arguing that the complaint "lacks allegations of protected conduct."  In

26

response, Carney argues that the conduct alleged in the complaint is "obviously protected activity."

To succeed on a claim for retaliation under RSA 354-A:19, Carney must allege that "(1) [he] engaged in a statutorily-protected activity; (2) [he] suffered an adverse employment action; and (3) the protected activity and the adverse employment action were causally connected." Madeja, 149 N.H. at 378-79 (citing Marrero v. Goya of Puerto Rico, Inc., 304 F.3d 7, 22 (1st Cir. 2002)).  Under RSA 354-A:19, a person engages in statutorily protected activity if "[1] he has opposed any practices forbidden under this chapter or . . . [2] has filed a complaint, testified or assisted in any proceeding under this chapter."  RSA 354-A:19.

To properly allege protected activity under the first clause, the opposition clause, the complaint "must contain plausible allegations indicating that the plaintiff opposed a practice prohibited by [the discrimination statute]." Morales-Cruz v. Univ. of Puerto Rico, 676 F.3d 220, 226 (1st Cir. 2012). Because the retaliation statute protects employees who have a "good faith, reasonable belief that the underlying challenged actions . . . violated the law," a complaint need only allege facts that provide a "reasonable basis for inferring that the [conduct at issue] reflected gender-based discrimination."  Id. To the contrary, the second clause, the participation clause,

27

"protects an employee regardless of the merit of his or her [administrative] charge."  See Ray v. Ropes & Gray LLP, 799 F.3d 99, 110 (1st Cir. 2015) (quoting Wyatt v. City of Boston, 35 F.3d 13, 15 (1st Cir. 1994)).

Here, Carney contends that he engaged in statutorily protected activity when he insisted that Begin investigate the rumor incident and when he filed a complaint with the Commission.  Although the filing of an administrative complaint falls under the participation clause, see RSA 354-A:19, Carney's involvement in the internal investigation prior to the filing of his administrative complaint must be assessed under the opposition clause.  See E.E.O.C. v. Rite Way Serv., Inc., 819 F.3d 235, 240 (5th Cir. 2016) ("[E]very Court of Appeals to have considered this issue squarely has held that participation in an internal employer investigation not connected with a formal EEOC proceeding does not qualify as protected activity under the participation clause."); Littlejohn v. City of N.Y., 795 F.3d 297, 316 (2d Cir. 2015) (holding that "internal complaints of discrimination prior to" plaintiff's administrative proceedings are not protected under the participation clause).

### a.  Participation Clause

Carney argues that his retaliation claim is based on retaliatory acts that the Police Defendants committed because he

filed a complaint with the Commission.  As the Police Defendants point out, however, that timeline does not work.  The Complaint contains no allegations of retaliatory acts that occurred after Carney filed his complaint with the Commission.  See Rolfs v. Home Depot U.S.A., Inc., 971 F. Supp. 2d 197, 214 (D.N.H. 2013) ("Causation moves forward, not backwards, and no protected conduct after an adverse employment action can serve as the predicate for a retaliation claim.") (quoting Pearson v. Mass. Bay. Transp. Auth., 723 F.3d 36, 42 (1st Cir. 2013)).  Although Carney cites one allegation of retaliation that occurred after his resignation in July, see doc. no. 21 at ¶ 186, there is no indication in the complaint that those alleged retaliatory acts occurred after he filed his administrative complaint with the Commission in December.  Carney also asserts new allegations of retaliation in his surreply.  On a motion for judgment on the pleadings, however, the court is limited to considering allegations contained in the pleadings.  Mercury Sys., 820 F.3d at 51.  Therefore, Carney has not pleaded any protected activity arising from the filing of his complaint with the Commission from which a retaliation claim could arise.

        b. Opposition Clause

    As discussed above, to plead protected activity under the "opposition clause," Carney must allege facts providing "a

29

reasonable basis for inferring that the [conduct at issue] reflected gender-based discrimination." Morales-Cruz, 676 F.3d at 226.   Under this standard, allegations of conduct that are "unarguably gender-neutral" fail to allege such a basis.  Id. Therefore, rumors concerning a sexual relationship between a male and a female employee, without more, do not provide a reasonable basis to conclude that sexual discrimination has occurred.  See Pasqua, 101 F.3d at 517 (affirming summary judgment on retaliation claim where alleged protected conduct was rumor of sexual relationship); Brady v. United States Capital Police, 15-cv-1299, 2016 WL 4186912 (D.D.C. Aug. 8, 2016) (applying Title VII standard and dismissing retaliation claim where alleged protected conduct was rumor of sexual relationship).

Carney contends that he engaged in protected conduct because he opposed the circulation of sexual rumors about the female town employee.  There are no facts alleged in the complaint, however, providing a reasonable basis to believe that those rumors constituted sexual discrimination.  As discussed above, the complaint's allegations concerning the purported sexual harassment are limited to describing isolated incidents in which WPD employees circulated rumors about Carney, a male, and a female Town employee.  Doc. no. 21 ¶¶ 90-91.  There are no other allegations in the complaint providing a basis to conclude

that those rumors were directed at the Town employee because she was a woman.  For example, the complaint does not identify the employee or describe the circumstances of her employment, does not allege that she experienced other gender-related harassment, and does not allege any other discriminatory incidents at the WPD.  In short, the court cannot plausibly infer that Carney had a reasonable basis to believe that sexual discrimination had occurred based solely on the isolated and gender-neutral incidents alleged in the complaint.

Accordingly, Carney's retaliation claims under RSA 354-A:19 against the Police Defendants fail.[12]

## II.  Broth's Motion

Broth moves for judgment on the pleadings on all of Carney's claims against him.[13]  In support, Broth argues that he is immune from liability on several of Carney's claims based on

---

[12] The Police Defendants also argue that Carney has failed to allege any retaliatory activity.  Because the Police Defendants' protected activity argument is dispositive, the court need not decide whether Carney has properly alleged retaliatory activity.

[13] Broth moves "to dismiss or, in the alternative, for judgment on the pleadings."  Doc. No. 31.  Because Broth has already filed an answer to the operative complaint, see doc. no. 24, his "motion to dismiss is properly treated as a motion for judgment on the pleadings."  Phaneuf v. Ortlieb, No. 12-CV-474-JL, 2013 WL 2147850, at *7 (D.N.H. May 16, 2013) (citing Fed. R. Civ. P. 12(c)).  In any event, the standards are the same.  Frappier, 750 F.3d at 96.

a privilege for statements made in litigation, that he cannot be
held liable under § 1983 because he is not a state actor, and
that Carney's conspiracy claims against him fail based on the
intracorporate conspiracy doctrine.  Broth also argues that
Carney's sexual harassment allegations against him fail because
Carney did not exhaust his administrative remedies.

Carney objects, arguing that Broth was a state actor for
purposes of § 1983, that the privilege for statements made in
the course of judicial proceedings and the intracorporate
conspiracy doctrine are inapplicable, and that he is entitled to
an exception to the exhaustion requirement.

A.  Discrimination Claims (Count X)

Carney brings claims for sexual harassment, aiding and
abetting unlawful employment practices, and retaliation against
Broth under RSA 354-A.  Broth moves for judgment on the
pleadings on those claims, arguing that Carney did not name him
in an administrative complaint to the New Hampshire Commission
for Human Rights, as required under RSA 354-A.[14]  Carney objects.

---

[14] In addition to his assertion that Carney failed to name
him in his administrative complaint, Broth asserts, with little
to no analysis, that he cannot be held liable under the
retaliation and aiding and abetting provisions of New
Hampshire's Law Against Discrimination because he is not an
employee of the Town.  Broth's argument is not adequately
developed for review.  See Coons v. Indus. Knife Co., Inc., 620
F.3d 38, 44 (1st Cir. 2010) (noting that the court is free to
disregard arguments that are not adequately developed).

As discussed above, the information in the pleadings and the documents fairly incorporated therein do not demonstrate that Carney's claims under RSA 354-A must be dismissed for failing to comply with that statute's charging requirement. Therefore, Broth's motion for judgment on the pleadings is denied with respect to Count X.

B.   § 1983 Claims (Counts VI-VIII)

Carney brings three claims under 42 U.S.C. § 1983 against Broth for violations of his civil rights.  These claims are premised on the allegations that Broth, through his role as the Town's counsel, violated Carney's (1) First Amendment rights by prohibiting him from contacting other WPD employees and (2) due process rights by participating in the procedurally-flawed investigation against him.

Broth argues that he is entitled to judgment on the pleadings on those claims because as a private attorney he is not a state actor and therefore cannot be held liable under § 1983.  Carney contends that he has adequately alleged that Broth is a state actor.

"When the named defendant in a section 1983 case is a private party, the plaintiff must show that the defendant's conduct can be classified as state action."  Jarvis v. Vill. Gun Shop, Inc., 805 F.3d 1, 8 (1st Cir. 2015), cert. denied, 136 S.

33

Ct. 2020 (2016).  "If there is no state action, the plaintiff's
claim fails." Id.  Carney bears the burden of pleading state
action in his complaint, Grapentine v. Pawtucket Credit Union,
755 F.3d 29, 32 (1st Cir. 2014), and failure to do so permits
the court to dismiss his § 1983 claims against Broth. Mead v.
Indep. Ass'n, 684 F.3d 226, 232 (1st Cir. 2012) (affirming
district court's dismissal of § 1983 claim where plaintiff
failed to allege that private party was a state actor).

    "[I]t is only in rare circumstances that private parties
can be viewed as state actors." Jarvis, 805 F.3d at 8 (internal
quotation marks omitted).  In accord with this principle,
"[g]enerally, private attorneys who are representing clients are
not state actors for purposes of § 1983." Brady v. Somersworth
Sch. Dist.,Sch. Bd., No. 16-CV-069-JD, 2016 WL 3248247, at *3
(D.N.H. June 13, 2016) (collecting cases).  That is true even
when a private attorney represents a public body. Dyer v.
Maryland State Bd. of Educ., 187 F.Supp.3d 599, 615 (D. Md. May
20, 2016) ("[I]t is well settled that a private attorney does
not become a state actor simply by representing a public body."
(collecting cases)).

    Carney, however, contends that Broth is a state actor under
exceptions to the general rules concerning private parties.  The
First Circuit has identified three ways in which "a private

34

party can be fairly characterized as a state actor."

Grapentine, 755 F.3d at 32.  Under these tests:

> A private party may become a state actor if [1] he
> assumes a traditional public function when performing
> the challenged conduct; [2] or if the challenged
> conduct is coerced or significantly encouraged by the
> state; [3] or if the state has so far insinuated
> itself into a position of interdependence with the
> [private party] that it was a joint participant in
> [the challenged activity].

Santiago v. Puerto Rico, 655 F.3d 61, 68-69 (1st Cir. 2011)

(internal quotation marks omitted).  Carney asserts that Broth
is a state actor under both the first prong, the traditional
public function test, and the third prong, the joint participant
test.

### 1.  Traditional Public Function Test

A private party is a state actor when he exercises "powers
traditionally exclusively reserved to the State."  Santiago, 655
F.3d at 69 (internal quotation marks omitted).  "Exclusivity is
an important qualifier, and its presence severely limits the
range of eligible activities."  Id.  As the First Circuit has
observed, "the narrowness of this range is no accident," as "it
is meant to counteract a state's efforts to evade responsibility
by delegating core functions to private parties."  Id.

Carney asserts that Broth exercised a traditional public
function because he had "taken over the police department" for
"all internal affairs investigations" in the WPD.  Carney,

35

however, provides no analysis in support of his assertion that
conducting or overseeing an internal investigation is a function
traditionally and exclusively reserved to state government.  To
the contrary, courts have concluded that private actors
conducting investigations on behalf of the government are not
state actors.  See Caleb v. Grier, 598 F. App'x 227, 236 (5th
Cir. 2015) (holding that attorneys who conducted internal
investigation for school district were not engaged in functions
traditionally exclusively reserved to the state); Anderson v.
Perhacs, 11-cv-289 at *7, 2013 WL 1336124 (W.D. Pa. Mar. 29,
2013) (concluding that private attorney who conducted internal
investigation was not a state actor because "a solicitor who
controls the direction and scope of a township's internal
investigation into a personnel matter cannot be said to have
engaged in official policy-making").  Therefore, Carney has not
alleged that Broth exercised a traditional public function by
overseeing the WPD's employee investigations.

Carney also argues that Broth was exercising a traditional
public function because he "enjoyed unilateral authority to act
as a town manager of sorts" or "was the super police chief" of
the WPD.  An attorney does not become a state actor merely by
providing advice to a municipality's officials or acting in his
professional capacity.  Caleb, 598 F. App'x at 234 (holding that
attorneys are not state actors because they only provided

36

recommendations); Beedle v. Wilson, 422 F.3d 1059, 1073 (10th Cir. 2005) ("The conduct of an attorney acting in his professional capacity while representing his client does not constitute action under color of state law for the purposes."); Jenn-Ching Luo v. Baldwin Union Free Sch. Dist., No. 12-CV-3073 JS AKT, 2013 WL 1182232, at *4 (E.D.N.Y. Mar. 21, 2013).  A municipality's attorney may become a state actor, however, if he unilaterally makes policy decisions that are normally reserved to the state.  See Anderson, 2013 WL 1336124, at *6; Frompovicz v. Twp. of S. Manheim, No. 3:06CV2120, 2007 WL 2908292, at *8 (M.D. Pa. Oct. 4, 2007).

The complaint does not adequately allege that Broth exercised the Town's policymaking authority.  Carney alleges several instances of improper treatment that resulted from the Town regulating WPD employment matters.  But in nearly every instance where Broth is implicated in those decisions, the complaint alleges in conclusory fashion that Broth and the Town (or Town officials) were jointly responsible.  See Doc. no. 21 at ¶¶ 78, 87, 113, 130, 175.  Those vague allegations are insufficient to plausibly allege that Broth, and not the Town's elected officials, possessed decision-making authority over the Town and the WPD.

Further, the complaint contains no factual allegations that the Town or its officials ever delegated policy-making authority

to Broth.  Indeed, Carney brings claims against several Town
officials, a number of whom he alleges were personally involved
in the disciplinary actions against him.  Finally, where the
complaint does allege conduct that is specifically attributed to
Broth, those allegations concern him acting in his professional
capacity, not making official government policy.  See Doc. no.
21 at ¶¶ 55-56 (advising investigator on procedure); 82
(drafting letters on behalf of client); 131 (communicating with
opposing counsel in litigation).

Accordingly, Carney fails to allege that Broth is a state
actor based on the public function test.

### 2.   Joint Participant Test

To establish state action under the joint participant test
"a plaintiff must show that the state has so far insinuated
itself into a position of interdependence with the private party
that it was a joint participant in the challenged activity."
Jarvis, 805 F.3d at 8-9.  The joint participant test
"concentrates . . . on the nature of the overall relationship
between the State and the private entity."  Perkins v.
Londonderry Basketball Club, 196 F.3d 13, 21 (1st Cir. 1999).
"The most salient factor in this determination is the extent to
which the private entity is (or is not) independent in the
conduct of its day-to-day affairs."  Santiago, 655 F.3d at 71

38

(internal quotation marks omitted).  Other relevant factors include, "whether the private party has shared profits generated from its challenged conduct with the state . . . and whether the private party has used public facilities." Jarvis, 801 F.3d at 9.

Here, the complaint does not contain sufficient factual allegations to support an inference that Broth and the Town were in a relationship of interdependence.[15]  Rather, the complaint's only factual allegations concerning Broth and the Town's relationship are limited to assertions that Broth acted as counsel for the Town in litigation and employment matters.  There are no allegations supporting an inference that the Town insinuated itself into Broth's day-to-day affairs.  Nor does the complaint allege any other facts suggesting that the Town and Broth were interdependent.

Moreover, Carney's allegation that Broth conspired with state actors does not establish the necessary joint participation to support state action.  A plaintiff may demonstrate state action by showing that a private party has

---

[15] As discussed above, the complaint does contain conclusory allegations of concerted action between Broth and Weare.  Those allegations, however, are insufficient to establish state action under the joint action test.  Lienau v. Garcia, No. 12-CV-6572 ER, 2013 WL 6697834, at *7 (S.D.N.Y. Dec. 19, 2013) (rejecting joint action theory where complaint merely contained "conclusory allegations of concerted action").

conspired with state actors to deprive him of a civil right.
See Dennis v. Sparks, 449 U.S. 24, 27 (1980).  To plead such a
conspiracy under § 1983, however, a plaintiff must allege "the
relationship or nature of cooperation between the state and a
private individual . . . in some detail."  McGillicuddy v.
Clements, 746 F.2d 76, 77 (1st Cir. 1984) (internal quotation
marks omitted).  That includes alleging "the essential
allegation of an agreement among" the alleged conspirators.
Tavares v. Gelb, 15-cv-130000-FDS, 2016 WL 6518428, at *9 (D.
Mass. Nov. 2, 2016).  The complaint's conspiracy allegations
lack sufficient detail to allege Broth's participation in a
civil rights conspiracy.  See Doc. no. 21 at ¶¶ 100-03
(describing a conspiracy among the Police Defendants but not
Broth), 108 (referencing a conspiracy between Broth and "other
[unnamed] town agents").  Therefore, Carney has failed to allege
that the Town was a joint participant in Broth's actions.

Accordingly, as Carney has failed to allege that Broth is a
state actor, his § 1983 claims (Counts VI-VIII) against Broth
are dismissed.

C.   Litigation Privilege

Broth argues that a litigation privilege insulates him from
liability on Carney's claims for conspiracy, defamation,
interference with contractual relations, emotional distress, and

violations of civil rights because those claims "arise out of
his actions in representing the Town of Weare, and certain of
its boards and departments."  Doc. No. 31-1.  In response,
Carney contends that the privilege does not apply to the broad
range of allegations that the complaint asserts against Broth.
Because the court has concluded that Broth is not a state actor
and therefore not liable under Carney's § 1983 claims, it need
only decide whether a privilege for litigation activities is
applicable to Carney's state law claims.

Under New Hampshire law, "certain communications are
absolutely privileged and therefore immune from civil suit."
Provencher v. Buzzell-Plourde Associates, 142 N.H. 848, 853
(1998) (quoting McGranahan v. Dahar, 119 N.H. 758, 762-63
(1979)).  "Statements made in the course of judicial proceedings
constitute one class of communications that is privileged from
liability in civil actions if the statements are pertinent or
relevant to the proceedings."  Id.  The New Hampshire Supreme
Court has extended the privilege to communications between
attorneys and witnesses before litigation as long as "litigation
was contemplated in good faith and under serious consideration
by the witness, counsel, or possible party to the proceeding at
the time of the communication."  Provencher, 142 N.H. at 855.
The rule "reflects a determination that the potential harm to an
individual is far outweighed by the need to encourage

participants in litigation, parties, attorneys, and witnesses, to speak freely in the course of judicial proceedings." Dahar, 119 N.H. at 763.

In his complaint, Carney alleges that Broth committed numerous wrongful acts in his role as the Town's attorney.  The complaint alleges that this misconduct occurred while Broth represented the Town in a series of employee investigations and the Chatel litigation.  There are few allegations in the complaint, however, that explain when Broth was acting in his capacity as litigation counsel and when Broth was acting in his capacity as a labor attorney conducting investigations.  This poses a problem for Broth's assertion of privilege because the complaint contains no allegations that would allow the court to conclude that those investigations were conducted when litigation was contemplated in good faith.  Absent any such allegations, the court cannot conclude that the entirety of Broth's alleged conduct qualifies for protection under the privilege.  Accordingly, Broth has failed to demonstrate that the privilege for statements made in the course of judicial proceedings bars Carney's state law claims at this stage of the litigation.

Whether the privilege bars any of Carney's claims is best addressed in the context of a properly-supported motion for summary judgment.

42

D.   <u>Civil Conspiracy (Count I)</u>

Carney brings a civil conspiracy claim, alleging that Broth and WPD employees conspired to illegally "force him out of his job." Broth contends that Carney has failed to state a claim for civil conspiracy based on the intracorporate conspiracy doctrine.[16] In response, Carney argues that the doctrine is not recognized under New Hampshire law.

A viable claim for civil conspiracy under New Hampshire law requires at least "two or more persons" conspiring to achieve an unlawful objective. In re Appeal of Armaganian, 147 N.H. 158, 163 (2001). Under the intracorporate conspiracy doctrine, the agents and employees of a corporate entity acting within the scope of their employment or authority are legally incapable of conspiring together. See, e.g., Johnson v. Dep't of Agric., 833 F.3d 948, 958-59 (8th Cir. 2016); Christians of California, Inc. v. Clive Christian N.Y., LLP, No. 13-CV-275 KBF, 2015 WL 468833, at *9 (S.D.N.Y. Feb. 3, 2015). This rule ordinarily bars conspiracy claims premised on a conspiracy between an attorney and a corporate client and its employees. See, e.g., Amadasu v.

_____

[16] Broth also contends that the intracorporate conspiracy doctrine bars Carney's § 1983 conspiracy claim against him. The court need not consider that issue, however, because, as discussed above, Carney's § 1983 claims against Broth fail because he has not sufficiently alleged that Broth is a state actor.

The Christ Hosp., 514 F.3d 504, 507 (6th Cir. 2008); Cream v. McIver, No. 2:15-CV-113-FTM-29CM, 2015 WL 2168946, at *4 (M.D. Fla. May 8, 2015); Horen v. Bd. of Educ. of Toledo City Sch. Dist., 594 F. Supp. 2d 833, 842 (N.D. Ohio 2009).

The doctrine "developed out of basic agency principles that attribute the actions of a corporation's agents to the corporation itself, which negates 'the multiplicity of actors necessary for the formation of a conspiracy.'" White v. City of Athens, 169 F. Supp. 3d 1254, 1269 (N.D. Ala. 2016) (quoting McAndrew v. Lockheed Martin Corp., 206 F.3d 1031, 1036 (11th Cir. 2000)); see also Harp v. King, 835 A.2d 953, 971 (Conn. 2003) (internal quotations omitted).

The New Hampshire Supreme Court has not decided whether the intracorporate conspiracy doctrine applies under New Hampshire law. Because this issue is a matter of substantive state law, the court must "predict how that court likely would decide the issue." Philibotte v. Nisource Corp. Servs. Co., 793 F.3d 159, 165 (1st Cir. 2015). In doing so, the court is aided by any "relevant statutory language, analogous decisions of the state supreme court, decisions of the lower state courts, and other reliable sources of authority." Barton v. Clancy, 632 F.3d 9, 17 (1st Cir. 2011).

The majority rule and the modern trend among states recognizes the intracorporate conspiracy doctrine. Most states

44

have concluded that the doctrine applies in their jurisdiction. See Robin Miller, Annotation, Construction and Application of "Intracorporate Conspiracy Doctrine" as Applied to Corporation and Its Employees-State Cases, 2 A.L.R. 6th 387 (2005) (collecting cases from over thirty states that recognize "a corporation and its employees, acting within the scope of their employment, cannot create a conspiracy").  Further, the few states that have expressly rejected the doctrine have not addressed the issue in over two decades.  Cox v. Cache Cty., No. 1:08-CV-124 CW, 2013 WL 4854450, at *5 (D. Utah Sept. 11, 2013), aff'd in part, No. 14-4123, 2016 WL 6471705 (10th Cir. Nov. 2, 2016) (concluding that Utah Supreme Court would follow the majority of other jurisdictions in recognizing intracorporate conspiracy doctrine).

     The court concludes that, if confronted with the issue, the New Hampshire Supreme Court would adopt the intracorporate conspiracy doctrine.  New Hampshire appears to adhere to the traditional principles of agency law that serve as the doctrine's foundation.  See Mannone v. Whaland, 118 N.H. 86, 88 (1978) (observing that regulation imputing acts of agent to corporate principal "to the extent of common law" was "a recognition for the obvious fact that corporations . . . must act through agents"); Sutton Mut. Ins. Co. v. Notre Dame Arena, Inc., 108 N.H. 437, 441 (1968) ("Since a corporation can act

only through its officers, agents and employees, it is
necessarily chargeable with the knowledge of its officers and
agents acting within the scope of their authority."). Given
these principles, the court perceives of no reason—and Carney
has suggested none—why the New Hampshire Supreme Court would
embrace a conclusion concerning the doctrine's applicability
that differs from the majority of other states. Therefore, the
court applies the doctrine to Carney's civil conspiracy claim.

Here, Carney alleges a civil conspiracy among Broth and WPD
employees, all of whom are employees or agents of the Town, a
corporation under New Hampshire law. R.S.A. 31:1 ("Every town
is a body corporate and politic, and by its corporate name may
sue and be sued, prosecute and defend, in any court or
elsewhere."). Carney has not alleged that any of the purported
coconspirators were acting outside the scope of their employment
or authority. Therefore, the intracorporate conspiracy doctrine
bars Carney's civil conspiracy claim against Broth.

Accordingly, Broth's motion for judgment on the pleadings
on Carney's civil conspiracy claim is granted.

III. Conclusion

For the foregoing reasons, Broth's motion for judgment on
the pleadings (doc. no. 31) is granted as to Carney's civil

46

conspiracy claim (Count I) and Carney's § 1983 claims (Counts VI-VII) but is otherwise denied.

The Town's motion for judgment on the pleadings (doc. no. 36) is granted on Carney's claims for sexual harassment under RSA 354-A and Title VII (Counts X and XII) and is otherwise denied.

The Police Defendants' motion for judgment on the pleadings (doc. no. 35) is granted on Carney's sexual discrimination and retaliation claims under RSA 354-A.  The Police Defendants' motion for judgment on the aiding and abetting claims under RSA 354-A is denied as to Cox, Hebert, McSweeney, and Montplaisir, but granted as to Nadeau and Savaria, both of whom Carney concedes he did not properly name in a complaint to the Commission.

The Individual Town Defendants' motion for judgment on the pleadings (doc. no. 37) is granted on Carney's sexual discrimination claims under RSA 354-A (Count X).  The Individual Town Defendants' motion for judgment on the retaliation and aiding and abetting claims under RSA 354-A is denied as to Butt, Clow, Lacasse, Lawton, and Leary but granted as to Bolton, whom Carney concedes he did not properly name in a complaint to the Commission.

The following claims remain in the case:

- civil conspiracy against the Police Defendants (Count I)

- defamation against Broth, the Town, and the Police Defendants (Count II)

- interference with a contractual relationship against Broth, the Police Defendants, and the Individual Town Defendants (Count III)

- intentional infliction of emotional distress against all defendants (Count IV)

- negligent infliction of emotional distress against Broth, the Police Defendants, and the Individual Town Defendants (Count V)

- 42 U.S.C. § 1983 claim for violation of Carney's First Amendment Rights against the Town and the Individual Town Defendants (Count VI)

- § 1983 claim for violation of due process against the Town and the Individual Town Defendants (Count VII)

- § 1983 claim for conspiracy to violate civil rights against the Town, the Police Defendants, and the Individual Town Defendants (Count VIII)

- wrongful termination against The Town (Count IX)

- RSA 354-A claims for (1) sexual discrimination against Broth, (2) retaliation against the Town, Broth, and the Individual Town Defendants except for Bolton and (3) aiding and abetting claims against the Town, Broth, the Individual Town Defendants except Bolton, and the Police Defendants except Nadeau and Savaria (Count X)

- violation of New Hampshire's Whistle Blower Protection Act, RSA 275-E against the Town (Count XI)

- retaliation claim against the Town under Title VII, 42 U.S.C. § 2000e-2 (Count XII)

48

- violation of New Hampshire's Employee Freedom of Expression Law, RSA 98-E against the Town (Count XIII).

SO ORDERED.

_____
Landya McCafferty
United States District Judge

February 21, 2017

cc:   Thomas M. Closson, Esq.
      Brian J.S. Cullen, Esq.
      Russell F. Hilliard, Esq.
      Daniel P. Schwarz, Esq.
      Tony F. Soltani, Esq.
      Laura Ann Spector, Esq.
      Wendy L. Spillane, Esq.